# REAL DE DOLORES DEL ORO *v.* UNITED STATES.

APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 17.  Argued and submitted January 12, 1899. — Decided November 30, 1899.

A claim in the Court of Private Land Claims for land within the limits of a mine grant, which grant has been confirmed by Congress and a patent issued therefor, must be rejected by that court.

Section 14 of the act of March 3, 1891, c. 539, 26 Stat. 854, 861, establishing that court, which provides for a personal judgment against the United States in cases where the land decreed to any claimant, under the provisions of the act, shall have been sold or granted by the United States, applies only to cases where such lands have been sold or granted as public lands, for a consideration which equitably belongs to the owner of the land, and not to cases where the Government has merely released its

interest to one apparently holding a good title under a Spanish or Mexican grant, which subsequently turns out to be invalid by reason of an older or better title.

THIS was a petition filed by the town of Real de Dolores del Oro and Guadalupe Montoya against the United States, the New Mexico Mining Company, and a large number of other defendants, for the confirmation of a tract of land containing four square leagues, having for its centre the centre of the old Real de Dolores del Oro — being the church situated therein — with a prayer that the tract may be confirmed to the town, or to the petitioner Montoya in his own right, and in trust for the benefit of the other owners of lands within its limits.

The petition set forth in substance that, in the year 1830, the governor of New Mexico founded the town of Real de Dolores del Oro according to the laws of New Mexico; that such town continued its existence from that time to the cession of said territory to the United States, having not less than forty residents, including not less than twenty householders and heads of families; that a church had been erected and maintained, and all of the requirements of the laws of the Republic of Mexico had been observed, and that the town had been fully recognized by public authority; that by virtue of such laws the town, in addition to the several allotments to its inhabitants, became and was entitled under the laws of Mexico to lands for the common use of the town, and in default of a grant for a larger quantity was entitled by law to a tract, including the lands held in severalty, of four square leagues from the centre of the town, namely, the church; that there was no direct evidence or record of such grant to the town ; that the town was not incorporated, but that the petitioner Montoya brought the petition on behalf of the town and himself, and of all other owners of land within the boundaries of the tract, and as the successors in part to the rights and title of the original grantee; that shortly after the acquisition of New Mexico by the United States the town ceased to exercise the powers and functions of a municipal government, or to elect municipal officers ; that the tract is

now held and claimed by a large number of persons under such grant, and it is not known that any of the possessors or claimants thereof are adverse to the petitioners, though they are informed that the New Mexico Mining Company claims some title or interest therein by virtue of a private land grant, which is subordinate to their title; that no claim for such tract has ever been submitted to the authorities, and no survey of the tract has ever been made.

Subsequently an order was made by the court requiring petitioners to bring before the court, as parties defendant, certain adverse possessors and claimants to portions of the land claimed under what was known as the San Antonio de las Huertas grant, then pending before the court.

The United States answered this petition, traversing the petitioners' allegations as to the origin, existence and right of the town to the grant claimed, and denied generally all the other allegations. The answer further averred that, even if such grant had been made as set forth in the petition, the land claimed thereunder was entirely within the limits of a tract of land known as the Ortiz Mine grant, which, by virtue of the laws, usages and customs, and mining ordinances of Mexico, was on the 28th of December, 1833, made to José Francisco Ortiz and Ignacio Caño; that the claim for such land was presented by the successors in interest of the original grantees, to the surveyor general of New Mexico, under the provisions of the act of Congress of July 22, 1854, for his approval. That the surveyor general subsequently approved the claim; transmitted the same to Congress, recommended its confirmation; and that afterwards Congress, by act approved March 1, 1861, confirmed said claim. That subsequently a survey was made by the public authorities, and on May 20, 1876, letters patent for such confirmed grant were duly issued to the New Mexico Mining Company as owner thereof. That such patent included the lands claimed in the petition, and that the action of Congress was and is conclusive and binding upon this court.

To the allegation of the answer setting up the Ortiz Mine grant, the petitioners excepted upon the ground that the

answer did not allege that the right of the petitioners to said land described in their amended petition had ever been lawfully acted upon or decided by Congress, or under its authority, and that said matter in said amended answer was insufficient in law to constitute a defence.

These exceptions were overruled by the court upon the ground that the claims of the petitioners were imperfect at the time the sovereignty and jurisdiction were acquired by the United States, and that it appeared by the answer that the Government had confirmed another grant and patented all the lands included in petitioners' claim.

The petitioners elected to stand upon the exceptions and introduced no evidence; and a decree was thereupon entered to the effect that petitioners' grant " was not a perfect and complete grant thereof at or prior to the date of the cession of New Mexico to the United States under and by virtue of the laws, usages and customs of the Republic of Mexico, in force at the alleged date thereof, and that the lands embraced within the said alleged grant to the petitioners lie wholly within the exterior boundaries " of the Ortiz mining grant; . . . " and that the right to the said land having been thereby lawfully acted upon and decided by Congress, and the Government of the United States having divested itself of the title to said property by the said act of·confirmation, and the said patent issued in pursuance thereof, this cause cannot be maintained in this court for the confirmation of the claim of petitioners, alleged in said amended petition." Whereupon petitioners appealed to this court.

*Mr. H. L. Warren*, for appellants, submitted on his brief.

*Mr. Matthew G. Reynolds* for the United States. *Mr. Solicitor General* was on his brief.

MR. JUSTICE BROWN, after stating the case as above, delivered the opinion of the court.

As it appears in this case that these lands were within the limits of the Ortiz Mine grant--which had been confirmed

by Congress, and a patent therefor issued to the principal defendant — it follows, without adverting to other defences, that under the opinion in *United States* v. *Conway*, just decided, the claim was properly rejected.

Nor can the petition be sustained for an indemnity under section fourteen of the Private Land Claim act, as no such claim is made by the petition. We are also of opinion that section 14 of the act of March 3, 1891, c. 539, 26 Stat. 854, (printed in full in margin,[1]) which provides for a personal judgment against the United States in cases where the land decreed to any claimant, under the provisions of the act, shall have been sold or granted by the United States, applies only to cases where such lands have been sold or granted as public lands, for a consideration which equitably belongs to the owner of the land, and not to cases where the Government has merely released its interest to one apparently holding a good title under a Spanish or Mexican grant, which subsequently turns out to be invalid by reason of an older or better title. In the one case there is a moral obligation on the part of the Government to protect the real owner. In the other, there is a mere quitclaim of its rights to one who apparently has a better title thereto. There is no warranty, direct or indirect, that the title is a valid one, and no reason why the Government should be called upon to protect it. This was the ruling of the Court

---

[1] SEC. 14. That if in any case it shall appear that the lands or any part thereof decreed to any claimant under the provisions of this act *shall have been sold or granted by the United States to any other person,* such title from the United States to such other person shall remain valid notwithstanding such decree, and upon proof being made to the satisfaction of said court of such sale or grant and the value of the lands so sold or granted, such court shall render judgment in favor of such claimant against the United States for the reasonable value of said lands so sold or granted, exclusive of betterments, not exceeding one dollar and twenty-five cents per acre for such lands; and such judgment, when found, shall be a charge on the Treasury of the United States. Either party deeming himself aggrieved by such judgment may appeal in the same manner as provided herein in cases of confirmation of a Spanish or Mexican grant. For the purpose of ascertaining the value and amount of such lands surveys may be ordered by the court, and proof taken before the court, or by a commissioner appointed for that purpose by the court.

of Private Land Claims in a prior case, and we think it is correct.

The decree of the court below is therefore

*Affirmed.*

MR. JUSTICE SHIRAS and MR. JUSTICE WHITE dissented.